CONGRESS FINANCIAL CORPORA-TION, a California corporation, Plaintiff-Appellee,

v.

J-K COIN OP EQUIPMENT CO., Inc., an Indiana corporation, and Benjamin H. Jaffe, Defendants-Appellants.

No. 15180.

United States Court of Appeals Seventh Circuit.

Dec. 7, 1965.

Paul E. Blackwell, Rochford & Blackwell, Indianapolis, for defendants-appellants.

William P. Wooden, James R. Dewey, Indianapolis, Ind., for plaintiff-appellee, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Before DUFFY, SCHNACKENBERG and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

J–K Coin Op Equipment Co., Inc., an Indiana corporation, and Benjamin H. Jaffe, defendants, have appealed from a final judgment of December 9, 1964 in favor of Congress Financial Corporation, a California corporation, plaintiff, and an order of February 9, 1965 denying a mo-

tion of said defendants to amend findings of fact and conclusions of law and for a new trial.

Congress Financial Corporation, a California corporation, plaintiff, in counts I and II of its second amended complaint sued defendant S. J. Kagan [1] on two promissory notes each in the principal amount of $12,998.05, payable to J–K, executed by him which were physically attached to conditional sales contracts on certain machines, also executed by Kagan to J–K. The notes were endorsed by J–K with recourse and delivered to plaintiff and the two conditional sales contracts with said notes attached, were assigned to plaintiff by J–K by separate assignments. In counts I and II, as well as in count III, below, it was alleged that on April 19, 1962 Jaffe executed a written guaranty to plaintiff that J–K would faithfully pay and discharge each obligation and promise made to plaintiff and Jaffe agreed to indemnify the latter against all loss incurred by reason of J–K's default. Defaults in payments due on said notes occurred and plaintiff sued all defendants herein.

In count III, to which Kagan is not a party, plaintiff sought recovery from only J–K and Jaffe. Count III involved a sale of four dry cleaning machines by Tenax, Inc., to J–K. Although the evidence showed that J–K ordered eight such machines on May 4, 1962 it was agreed by a letter between Tenax and J–K, dated May 25, 1962, that the machines purchased by J–K could be warehoused pending payment, with plaintiff to "advance" money for J–K's "account". Thus, under date of June 4, 1962, Tenax, Inc., invoiced J–K $37,800 for five machines, and by letter to plaintiff dated June 5, 1962, J–K stated: "This is to advise you that we have authorized Tenax,

I. We shall refer to the corporate defendant as "J–K", and said Jaffee and S. J. Kagan, the individual defendants as "Jaffe" and "Kagan" respectively. Kagan did not appeal.

Inc., to warehouse eight (8) coin operated dry cleaners for us."

Pursuant to the May 25, 1962 letter agreement, plaintiff advanced $37,800 for the account of J–K, on the five warehoused machines. Thereafter, in late August, 1962, J–K paid for one of the machines, which was then released from the warehouse. The balance due for the remaining four machines, $30,240, was never paid.

After J–K and Jaffe failed to respond to demands, plaintiff exercised its rights as assignee of an unpaid seller. After giving notice to J–K and Jaffe, plaintiff sold the four machines for $4,000. The expenses of the sale were $1,370.42. The balance due was, thus, reduced by $2,629.58.

The parties are in agreement that the law of Indiana is applicable to this case.

The district court made findings of fact and conclusions of law.

The court found that the Clesco Corporation, a subsidiary of Tenax, Inc., at all relevant times was a manufacturer of a coin operated dry cleaning unit designed for use in self-service laundry establishments; that Tenax and plaintiff entered into a written contract providing for the financing of Tenax' accounts receivable. Plaintiff and Tenax were separate unrelated entities. Jaffe was an exclusive Indiana dealer of Tenax' dry cleaning unit and J–K was organized for such dealership with Jaffe as its principal stockholder and guiding hand.

The court further found the amount of interest due on the notes sued upon.

After notifying J–K and Jaffe, plaintiff sold the remaining warehoused units and credited the net sale price to their account.

Plaintiff demanded payment of J–K and Jaffe for the balance due it.

The court concluded as a matter of law that the notes here involved are negotiable promissory notes as defined in the uniform negotiable instruments law, and that they were endorsed in blank by J–K and delivered to and accepted by plaintiff in good faith before maturity for a valuable consideration and without knowledge or notice of any defenses thereto, making plaintiff a holder in due course. The court concluded that plaintiff was entitled to judgment against defendant Kagan as the maker of the note sued upon in count I and that defendant J–K was secondarily liable thereon as the endorser. The court then concluded, as to the contract of guaranty involved, that defendant Jaffe is, secondarily to the maker Kagan and the endorser J–K, indebted to plaintiff, which is entitled to judgment against defendant Jaffe as the guarantor of the endorser J–K, who is secondarily liable under count I.

The court further concluded that defendant Kagan is primarily indebted to plaintiff as maker of the note sued on in count II, and that J–K is secondarily indebted to plaintiff as endorser thereof wherefore plaintiff is entitled to a judgment thereon against J–K and Kagan.

The court further concluded that Jaffe, because indebted to plaintiff by reason of the contract of guaranty, was subject to judgment in favor of plaintiff, under count II.

The district court decided that plaintiff proved all of the essential elements of count III and that J–K and Jaffe failed to establish any defense thereto. It held that Jaffe was obligated under his contract with plaintiff and that he failed to make payment when demanded by plaintiff. The court found that plaintiff is the real party in interest in the claims involved in count III and that defendants J–K and Jaffe failed to prove any defenses thereto, thus entitling plaintiff to judgment on the second amended complaint against J–K and Jaffe for $36,530.02. Finally the court held that defendant Jaffe was liable for attorneys' fees of $2250 under the contract of in-

demnity, which was included in plaintiff's judgment.

From the complete record in this case, we find that there is substantial evidence to support all of the findings of fact made by the district court and that none of them is clearly erroneous. 28 U.S.C.A. rule 52(a).

■ We agree with the district court that, under the negotiable instruments law, Burns' Indiana Stats. Anno., 1950 Repl. Vol. 19—101, the notes here involved are negotiable instruments.

We hold that the endorsement of J–K on the notes was unqualified and unconditional and that plaintiff was a holder thereof in due course, unaffected by the fact that, when executed, each note was attached to a conditional sales contract. Dorbecker v. Brandt C. Downey Company, 88 Ind.App. 557, 163 N.E. 535 (1928).

■ Defendants argue that, in the agreement of April 19, 1962 with plaintiff, neither Jaffe nor J–K guaranteed payment to plaintiff in the event of Kagan's default.

However, that agreement provides that, in consideration of plaintiff extending loans to, or purchasing notes, installment obligations and contracts or other forms of deferred obligations from J–K, Jaffe guaranteed to plaintiff, as primary obligor, that J–K:

"[W]ill promptly and faithfully pay, perform and discharge each obligation and promise now existing and hereafter arising to you [plaintiff], promptly when due, and [Jaffe] agree[s] on demand to pay any and all sums not so paid by the Company [J–K] * * *"

Jaffe now points out that in his agreement with plaintiff he agreed that

" * * * J–K would 'promptly and faithfully pay, perform and discharge each obligation and promise now existing and hereafter arising to you [plaintiff], promptly when due, and agree on demand to pay any and all sums not so paid by the Company and to indemnify you [plaintiff] against and reimburse you [plaintiff] for all loss, costs, attorney's fees or expenses which you [plaintiff] may be caused to suffer or incur by reason of Company's [J–K's] default.' "

and that nowhere in the two agreements did J–K or he guarantee payment to plaintiff in the event of Kagan's default. In addition, defendants contend that the evidence discloses that no demand was made upon J–K or Jaffe and that defendants were not aware that plaintiff was going to proceed against them on a guaranty agreement until suit was filed herein.

However, the record shows that vice-president Miller of plaintiff testified to conversations with Jaffe about this guaranty and that oral demands were made upon Jaffe. Testimony of a similar nature came from vice-president Goldman of plaintiff.

■ The district court in finding No. 10 said, in part:

"The defendants were each notified of the defaults and demand was made within the reasonable time thereof for payment as to all defendants."

This finding is clearly sustained by the evidence.

We hold that the district court committed no error in rejecting the defense of laches advanced by defendants.

■ Defendants herein were properly joined in this action. 28 U.S.C.A. rule 20.

We hold that the finding and judgment below are sustained by sufficient evidence and are not contrary to law.

For all of these reasons, the judgment and order from which this appeal was taken are affirmed.

Judgment and order affirmed.